UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

THE DEMOCRATIC PARTY OF WISCONSIN,
COLLEEN ROBSON; ALEXIA SABOR; PETER
KLITZKE; DENIS HOSTETTLER, JR.; DENNIS D.
DEGENHARDT; MARCIA STEELE; NANCY
STENCIL; and LINDSAY DORFF,

                        Plaintiffs,

                    -against-

ROBIN VOS, in his official capacity as speaker of the
Wisconsin State Assembly; SCOTT L.
FITZGERALD, in his official capacity as majority
leader of the Wisconsin State Senate;
ALBERTA DARLING, in her official capacity as
co-chair of the Wisconsin Joint Committee on
Finance; JOHN NYGREN, in his official capacity as
co-chair of the Wisconsin Joint Committee on
Finance; ROGER ROTH, in his official capacity as
President of the Wisconsin State Senate;
JOAN BALLWEG, in her official capacity as co-
chair of the Wisconsin Joint Committee for Review of
Administrative Rules; STEPHEN L. NASS, in his
official capacity as co-chair of the Wisconsin Joint
Committee for Review of Administrative Rules;
JOEL BRENNAN, in his official capacity as
Secretary of the Wisconsin Department of
Administration; TONY EVERS, in his official
capacity as Governor of the State of Wisconsin, and
JOSHUA L. KAUL, in his official capacity as
Attorney General of the State of Wisconsin,

                        Defendants.

No. __19-cv-142_____

**COMPLAINT**

JURY TRIAL DEMANDED

1

## INTRODUCTION

1.     Elections matter.  In this case, a lame-duck legislature and outgoing governor deprived the people of Wisconsin of their electoral choice.  They did so by curtailing the executive powers of the state's incoming governor and attorney general, and by transferring those powers to the legislature, which was to stay in Republican hands.  In these rare circumstances, only the courts can redress these unconstitutional attacks on the will of the people.

2.     In November 2018, Wisconsin's people voted then-Governor Scott Walker and then-Attorney General Brad Schimel out of office.  They did so because then-candidates Tony Evers and Josh Kaul promised on the campaign trail to take Wisconsin in a different direction.  For example, then-candidate Evers promised to expand access to health care by using executive powers, while then-candidate Kaul promised to defend the Affordable Care Act ("Obamacare") in litigation rather than seek to set it aside (as his predecessor had sought to do).  These policies excited a majority of Wisconsin's voters, including plaintiffs here.  But the prospect that these policies might be implemented frightened Walker and some of his colleagues in the state legislature.[1]  So, together, they set about to undo the electoral results.

3.     The method was simple — enact legislation that would, once Governor Evers and Attorney General Kaul took office, curb Wisconsin's Executive from taking action that had been open to predecessor administrations, such as promulgating regulations, appointing officers, and even acting on Wisconsin's behalf in litigation.  Defendants' objective, plain from the face of the

---

[1]     The Legislator Defendants are Robin Vos, Scott F. Fitzgerald, Alberta Darling, John Nygren, Roger Roth, Stephen Nass, and Joan Ballweg.  They are sued because they took the actions complained of in this suit and because they have been given the power to defend the legislation being challenged under the plain terms of that legislation.  Governor Tony Evers and Attorney General Josh Kaul are nominal defendants in this suit because, under the Wisconsin Constitution, they are the principal officers tasked with implementing Wisconsin's laws, but they did not take any of the actions challenged in this suit.  As a result, we refer to nominal defendants Evers and Kaul by name and to the remaining defendants simply as "Defendants."

proposed legislation, was also publicly conceded — Walker and the Defendant Legislators candidly admitted that their goal was to disempower the incoming administration and that, but for the electoral results, Defendants would not have sought to enact any of the legislative decrees they pushed through the legislature.

4.      Members of the outgoing unified Republican government were not shy about their objectives.  Speaking on November 7, 2018, less than one day after the electoral defeat, Defendant Robin Vos, the Republican Speaker of the Wisconsin State Assembly, started the lame-duck process that culminated in the passage of the challenged legislation while stating that he wished to "rebalance" the powers of Wisconsin's governor in light of the electoral outcome.[2]  Later, asked by a democratic legislator "if Governor Walker were re-elected, would we be here tonight [to enact the statutes?],", State Representative John Nygren coyly conceded "My guess is we wouldn't necessarily be here tonight[.]"[3]  Former Governor Walker refused to answer questions as to whether the lame-duck laws would have passed had he been reelected.[4]  And Defendant Vos repeatedly argued that Acts 369 and 370 (the "Acts") are "about making sure what we have in

---

[2] AP, *Speaker Vos open to looking at ways to limit Gov.-elect Tony Evers' power*, WISN (Nov. 7, 2018), https://www.wisn.com/article/speaker-vos-open-to-looking-for-ways-to-limit-gov-elect-tony-evers-power/24805758.

[3] Mitch Smith, John Eligon, and Monica Davey, *Behind the Scenes in Wisconsin: A Republican Power Play, Months in the Making*, N.Y. TIMES (Dec. 7, 2018), https://www.nytimes.com/2018/12/07/us/wisconsin-republicans-power.html.

[4] Molly Beck, *Scott Walker Signals Support for Republican Plan to Shrink Power of Tony Evers, Josh Kaul*, MILWAUKEE J. SENTINEL (Dec. 3, 2018), https://www.jsonline.com/story/news/politics/2018/12/03/scott-walker-signals-support-republican-plan-shrink-power-tony-evers-josh-kaul/2197358002/ ("Walker did not directly answer whether he would consider signing the same proposals had he won re-election on Nov. 6.").

practice stays in practice,"[5] and that Democratic officeholders' priorities "are in direct contrast to what many of us believe in."[6]

5.      When it came time to sign the bills into law, Walker was facing public pressure, and, on his way out the door, he sought to defend his role in curbing the powers of his successor. Thus, he argued to the public that the incoming administration would have the "same powers" that his own administration had possessed:



6.      But the entire purpose of the extraordinary legislative session and of the bills that were pushed through it was to curb the authority of the incoming administration.  And this is plainly what was accomplished:   Defendants took many traditional powers away from the

---

[5] Adam Rogan and Stephanie Jones, *Vos Responds to Evers, Explains Ideas for Executive Power Changes*, JOURNAL TIMES (Nov. 9, 2018), https://journaltimes.com/news/local/govt-and-politics/vos-responds-to-evers-explains-ideas-for-executive-power-changes/article_9ac40668-f24c-5a9a-a71e-17bfa9070b52.html.

[6] Adam Greenblatt, *Lame-Duck Power Grabs Aren't New, But Republicans in Wisconsin and Michigan Are 'More Aggressive'*, GOVERNING (Dec. 5, 2018), http://www.governing.com/topics/politics/gov-wisconsin-power-governor-evers-michigan-walker-whitmer.html.

Executive, and gave the new Executive nothing in return, and did so solely to disempower Walker's successor.  Frankly, the fact that Walker felt compelled to go through the charade was simply an admission of his guilt.  Had he been honest, this is what he would have shown instead:



7.      Indeed, there can be no doubt that the Acts deprived the incoming administration of authorities its predecessor had, while specifically targeting areas on which Wisconsin's newly elected Democratic governor and attorney general had campaigned:

- Democratic candidates for executive office had campaigned on promises to redirect the Wisconsin Economic Development Corporation ("WEDC"); the Acts packed the board of the WEDC with legislative appointees and removed the ability of the governor to appoint the CEO.

- Democratic candidates had campaigned on promises to change Department of Transportation administrative rules implementing voter ID requirements; the Acts removed the power of the governor to change these rules.

- Democratic candidates had campaigned on promises to withdraw the state of Wisconsin from litigation challenging Obamacare; the Acts removed the Wisconsin Department of Justice's discretion to do so.

- Democratic candidates had campaigned on promises to prevent transfers of funds from state veterans' homes; the Acts removed the power of the governor to prevent such transfers.

- Democratic candidates had campaigned on eliminating Scott Walker's work requirements for Medicaid recipients; the Acts removed the power of the governor to change these requirements.

- Democratic candidates had campaigned on negotiating with the federal government to expand Medicaid; the Acts transferred the ultimate discretion to expand Medicaid to the legislature.

- Democratic candidates had campaigned on eliminating Scott Walker's drug testing requirements under Wisconsin's food stamp program; the Acts removed the power of the governor to change these requirements.

In addition, the Acts gave the legislature sweeping, unilateral control over the personnel and budget of Wisconsin's Department of Health Services; they limited the governor's ability to delegate executive functions within executive departments; they gave the legislature final say over whether the State of Wisconsin can settle, compromise, or withdraw from injunctive suits involving the state; and they gave the legislature the power to indefinitely suspend administrative rules crafted by the Executive.

8.      Defendants' conduct is not just offensive to the will of Wisconsin's voters.  It also violates the United States Constitution and should be enjoined.  *First*, because the "extraordinary" lame-duck session that was used to enact Acts 369 and 370 was convened for the purpose and had the effect of transferring the powers heretofore wielded by the Executive to the legislature in order to blunt the electoral results, the Acts are void for violating the Guarantee Clause of the United States Constitution.  *Second*, for much the same reasons, the Acts improperly interfered with the fundamental right of voters to free expression and association, and violate the First Amendment. *Third*, by discriminating against Plaintiffs based on political viewpoint and diluting their votes, the Acts violate the Equal Protection Clause of the Fourteenth Amendment.

## PARTIES

9.      Plaintiff Democratic Party of Wisconsin ("DPW") is the association representing Democratic voters in the State of Wisconsin.  DPW is an affiliate of the Democratic National

Committee.  Its headquarters is located in Madison, Wisconsin, and it coordinates the work of county-level parties in all 72 counties in Wisconsin.  During the 2018 election cycle, DPW coordinated support among Wisconsin voters, predominately those registered as Democrats, for Democratic candidates for statewide office.  In the course of the 2018 campaign, DPW raised millions of dollars to support Democratic candidates for statewide executive office, including Governor Tony Evers and Attorney General Josh Kaul, both of whom are members of DPW.  The candidates supported by DPW advanced policy preferences shared by those Wisconsinites choosing to assemble as DPW, as identified in DPW's 2018 party platform.  *See* Our Party, Democratic Party of Wisconsin, www.wisdems.org/constitution-and-bylaws (last visited February 4, 2019).  And DPW and its members in turn supported these candidates by organizing together and engaging in activities such as public education, door knocking, small-donor fundraising, phone banking, all with the expectation that if then-candidates Evers and Kaul prevailed, they would be able to use the same executive authority that has been traditionally in place in Wisconsin — and was in place on the day Evers and Kaul were elected to serve the State of Wisconsin.

10.    The Democratic Party of Wisconsin brings this action on its own behalf and on behalf of its members.  It asserts their collective interests as taxpayers and voters who supported Governor Evers and Attorney General Kaul in their 2018 election campaigns, and have had their election efforts blunted by the Legislator Defendants' lame-duck law.

11.    Plaintiff Colleen Robson is a member of DPW and a resident of East Troy, Wisconsin.  She worked to support Democratic candidates for statewide office during the 2018 election through activities such as contributing money to candidates, holding office hours with her local chapter of the Democratic Party of Wisconsin, providing management guidance to election-campaign leaders, and housing campaign volunteers at her home.  She supported these

candidates in part because they promised to reform the WEDC, eliminate costly and unnecessary voter identification requirements, withdraw the State of Wisconsin from federal litigation challenging the constitutionality of the Affordable Care Act, and eliminate unproven drug testing requirements for recipients of public assistance.

12.     Plaintiff Alexia Sabor is a resident of Madison, Wisconsin.  She worked to support Democratic candidates for statewide office during the 2018 election by campaigning and organizing Wisconsin voters for more than 100 hours during the 2018 election cycle.  During this time, Ms. Sabor conducted voter outreach to thousands of Wisconsin voters, contributed at least $100 to then-candidates Tony Evers and Josh Kaul's campaigns, and served on the communications team for her local chapter of the Democratic Party of Wisconsin.  She supported these candidates because, among other things, Governor Evers and Attorney General Kaul promised to withdraw the State of Wisconsin from a federal lawsuit seeking to overturn the Affordable Care Act, and she agrees with Governor Evers' promises to change the WEDC in light of the disastrous Foxconn giveaway.[7]

13.     Plaintiff Peter Klitzke is a resident of La Crosse, Wisconsin.  He worked to support Democratic candidates for statewide office during the 2018 election by, among other things, organizing voters and helping college students comply with Wisconsin's restrictive voter identification rules, organizing campaign events in his community, and knocking on thousands of doors.  He supported Governor Evers' candidacy in part because he wants Wisconsin's governor to expand Medicaid in the state; he wants to eliminate costly and unnecessary "voter ID"

---

[7] For background on the Wisconsin-Foxconn agreement, see Dominic Rushe, *'It's a huge subsidy': the $4.8bn gamble to lure Foxconn to America* (July 2, 2018), available at https://www.theguardian.com/cities/2018/jul/02/its-a-huge-subsidy-the-48bn-gamble-to-lure-foxconn-to-america.

regulations; he supports providing greater services to veterans through programs such as Wisconsin's Veterans Trust Fund; and he supports enacting regulations to provide greater protections for the environment in order to enhance opportunities for sportsmen and women who hunt and fish in Wisconsin.

14.     Plaintiff Denis Hostettler, Jr., is a resident of Cudahy, Wisconsin.  Mr. Hostettler is not a registered Democrat, but he supported Governor Evers and Attorney General Kaul during the November 2018 election because, among other reasons, he relied on their promises to (a) reform the Wisconsin Economic Development Corporation; (b) eliminate voter identification requirements imposed by Republicans; (c) withdraw the state of Wisconsin as plaintiff from a legal challenge to the Affordable Care Act; (d) expand Medicaid in the state of Wisconsin; and (e) eliminate drug testing requirements for public-assistance recipients in Wisconsin.

15.     Plaintiff Dennis Degenhardt is a member of DPW and a resident of West Bend, Wisconsin.  He worked to support Democratic candidates for statewide office during the 2018 election by campaigning almost every day, speaking on behalf of Governor Evers, Attorney General Kaul, and other Democratic candidates for statewide office because he believed that they would carry out the promises they made on the campaign trail.  Mr. Degenhardt spent between eight and ten hours almost every day knocking on doors and talking with voters on the phone during the three months leading up to the November 2018 election.  He also spoke at election forums and worked with college students to help them comply with Wisconsin's restrictive voter identification laws.  He supported Governor Evers and Attorney General Kaul in part because they promised to (a) expand Medicaid in the state of Wisconsin; (b) withdraw the state of Wisconsin as plaintiff from a legal challenge to the Affordable Care Act; (c) increase commitment to public education by reforming the Wisconsin Economic Development Corporation and eliminating

corporate welfare programs (such as for Foxconn); (d) eliminate drug testing requirements for recipients of food assistance in Wisconsin; and (e) use the power of the Wisconsin Department of Justice and the Office of the Solicitor General to represent the State of Wisconsin in lawsuits in a progressive way.

16.     Plaintiff Marcia Steele is the Chair of the Democratic Party of Winnebago County, an affiliate of the Democratic Party of Wisconsin, and a resident of the Town of Algoma, Wisconsin.  She worked to support Democratic candidates for statewide office during the 2018 election by (a) organizing campaign events for Governor Evers, Attorney General Kaul, and other candidates; (b) knocking on hundreds of doors and talking to hundreds of voters in order to get out the Democratic vote; and (c) recruiting volunteers to help get Democratic candidates elected to office.  She engaged in these activities on a near-daily basis between August 2018 and Election Day in November 2018.  She supported these candidates in part because of their promises to withdraw Wisconsin from a federal lawsuit challenging the Affordable Care Act, to expand Medicaid, and to repeal drug testing requirements for people seeking public assistance, because she believes those requirements to be unethical and immoral.  She supported Governor Evers in particular because of his commitment to undoing restrictions on voting rights, reforming the WEDC, and changing the Foxconn agreement.  Regarding Attorney General Kaul's campaign, she was additionally motived to support him because she supported his pledge to use the Office of the Wisconsin Attorney General and Solicitor General to advocate for progressive change.

17.     Plaintiff Nancy Stencil is an active member of the Democratic Party of Wisconsin from Wausau, Wisconsin.  As chair of the Marathon County Democratic Party, she worked to support Democratic candidates for statewide office during the 2018 election by hosting office hours at the Marathon County Democratic Party office, training volunteers, knocking on doors,

managing phone banks, and organizing campaign events in her area for Governor Evers and Attorney General Kaul.  She also contributed money to their election campaigns and made in-kind contributions to their election effort.  She supported these candidates due to their progressive policies and promise to implement change, including expanding Medicaid, removing Wisconsin from federal lawsuits challenging the constitutionality of the Affordable Care Act, and eliminating restrictions to voting rights placed by "voter ID" laws.

18.     Plaintiff Lindsay Dorff is a former public-school teacher and a resident of Green Bay, Wisconsin.  She worked to support Democratic candidates for statewide office during the 2018 election by knocking on doors and making phone calls on behalf of candidates, volunteering with her local Democratic Party's communications team to promote candidates' campaigns on social media, attending press events, and contributing money to Governor Evers' campaign.  She supported these candidates in part because she relied on their promises to (a) expand Medicaid in Wisconsin; (b) eliminate work requirements for Medicaid recipients; (c) withdraw the state of Wisconsin as plaintiff from a legal challenge to the Affordable Care Act; (d) reform the WEDC; and (e) eliminate drug testing requirements for recipients of food assistance in Wisconsin due to the harms that policy will have on Wisconsin school children, an issue she understands given her background as a former public-school teacher.

19.     Defendant Robin Vos is the Speaker of the Wisconsin State Assembly.  He is sued in his official capacity as co-chair of the Joint Committee on Legislative Organization, which has, under the Act, arrogated to itself powers formerly exercised by Wisconsin's Executive—including the power to defend the Act.  Defendant Vos can be found at Room 217 West in the Wisconsin State Capitol, PO Box 8953, Madison, Wisconsin.

20.     Defendant Scott Fitzgerald is the Majority Leader of the Wisconsin State Senate. He is sued in his official capacity as member of the Joint Committee on Legislative Organization, which has, under the Act, arrogated to itself powers formerly exercised by Wisconsin's Executive—including the power to defend the Act.  Defendant Fitzgerald can be found at Room 211 South in the Wisconsin State Capitol, PO Box 7882, Madison, Wisconsin.

21.     Defendant Alberta Darling is the Senate Co-Chair of the Wisconsin Joint Committee on Finance, which has, under the Act, arrogated to itself powers formerly exercised by Wisconsin's Executive.  She is sued in her official capacity because she now has the power to defend the Act.  Defendant Darling can be found at Room 317 East in the State Capitol, PO Box 7882, Madison, Wisconsin.

22.     Defendant John Nygren is the Assembly Co-Chair of the Wisconsin Joint Committee on Finance, which has, under the Act, arrogated to itself powers formerly exercised by Wisconsin's Executive.  He is sued in his official capacity because he now has the power to defend the Act.  Defendant Nygren can be found at Room 309 East in the Wisconsin State Capitol, PO Box 8953, Madison, Wisconsin.

23.     Defendant Roger Roth is the President of the Wisconsin State Senate, which has, under the Act, arrogated to itself powers formerly exercised by Wisconsin's Executive.  He is sued in his official capacity because he now has the power to defend the Act.  Defendant Roth can be found at Room 220 South in the Wisconsin State Capitol, PO Box 7882, Madison, Wisconsin.

24.     Defendant Joan Ballweg is the Assembly Co-Chair of the Wisconsin Joint Committee for Review of Administrative Rules, which has, under the Act, arrogated to itself powers formerly exercised by Wisconsin's Executive.  She is sued in her official capacity because

she now has the power to defend the Act.  Defendant Ballweg can be found at Room 210 North in the Wisconsin State Capitol, PO Box 8952, Madison, Wisconsin.

25.     Defendant Stephen L. Nass is the Senate Co-Chair of the Wisconsin Joint Committee for Review of Administrative Rules, which has, under the Act, arrogated to itself powers formerly exercised by Wisconsin's Executive.  He is sued in his official capacity because he now has the power to defend the Act.  Defendant Nass can be found at Room 10 South in the Wisconsin State Capitol, PO Box 7882, Madison, Wisconsin.

26.     Defendant Joel Brennan is the Secretary of the Wisconsin Department of Administration.  He is sued in his official capacity.  Secretary Brennan can be found at 101 East Wilson St., 10th Floor, in Madison, Wisconsin.

27.     Defendant Tony Evers is Governor of the State of Wisconsin.  He is sued in his official capacity and is a nominal defendant only.  Wisconsin's Executive is ordinarily tasked with enforcing the laws of Wisconsin, but under the Acts the Wisconsin Legislature has arrogated to itself the power to defend them.  Governor Evers' predecessor, Scott Walker, took the actions relevant to this Complaint in his capacity as Wisconsin's governor.  Governor Evers can be found at the Office of the Governor of the State of Wisconsin, Room 115 East in the Wisconsin State Capitol in Madison, Wisconsin.

28.     Defendant Josh Kaul is Attorney General of the State of Wisconsin.  He is sued in his official capacity and is a nominal defendant only.  Wisconsin's Executive is ordinarily tasked with enforcing the laws of Wisconsin, but under the Acts the Wisconsin Legislature has arrogated to itself the power to defend them.  Attorney General Kaul can be found at the Office of the Attorney General at the Wisconsin Department of Justice, Room 114 East in the Wisconsin State Capitol in Madison, Wisconsin.

## JURISDICTION AND VENUE

29.     There is federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution of the United States, specifically Article IV, Section 4, thereof, as well as the First and Fourteenth Amendments thereto, as well as 42 U.S.C. §§ 1983 and 1988. Jurisdiction also exists pursuant to 28 U.S.C. §§ 1343(3) and (4).  Plaintiffs in this case are injured and thus have standing to pursue the claims raised in this case due to the deprivation of constitutional rights caused by Acts 369 and 370, the diluting effect the Acts have had on Plaintiffs' rights due to Plaintiffs' political viewpoint, and the Acts' discriminatory purpose.

30.     Courts have power to award the declaratory and injunctive relief requested herein under the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202).

31.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

**I.      Unified Republican Government in Wisconsin Implements a Gerrymander Designed to Perpetuate Republican Control of the Wisconsin Legislature**

32.     Wisconsin's tradition of competitive elections was virtually eliminated in 2011 after the Republican party, through its control of the State's redistricting process, enacted a redistricting plan that is gerrymandered on partisan grounds.  Written in complete secrecy, Republicans' 2011 redistricting plan solidified one-party dominance in the Wisconsin Legislature.

33.     Consistent with the gerrymanderers' objectives, in 2012, a majority of Wisconsin voters voted for Democrats in state legislative races, but Republicans nonetheless captured sixty-three of the ninety-nine State Assembly seats.  In 2016, Democrats and Republicans were virtually tied, yet Republicans increased their majority in the Assembly to sixty-four seats.

34.     In view of these results, and of additional facts that were part of the record in a lawsuit challenging Wisconsin's district lines, a federal court subsequently held that Wisconsin's gerrymandered district lines violate the U.S. Constitution.  *See Whitford v. Gill*, 218 F. Supp. 3d 837 (W.D. Wis. 2016), *vacated and remanded on standing grounds*, 138 S. Ct. 1916 (2018).

35.     In 2018, for the fourth state election in a row—and despite vote counts that were close to evenly divided between statewide Republican and Democratic candidates—Republican majorities in the state Assembly and Senate held fast or grew.

## II.     Governor Tony Evers and Attorney General Josh Kaul Win Historic Elections to Executive Offices by Promising to Exercise the Powers of those Offices

36.     On November 6, 2018, then-candidates Tony Evers and Josh Kaul won their elections to assume the roles, respectively, of Governor and Attorney General of Wisconsin.  Every other Democratic candidate for statewide executive office also won. As a result of these historic victories, members of DPW would take control of every statewide executive office for the first time in decades.

37.     During their campaigns, the victorious candidates promised to implement various policy changes by using the existing powers of the executive offices for which they campaigned. For example, in the gubernatorial campaign, Governor Evers took the position that the WEDC "has been a constant source of controversy, inefficiency and ineffectiveness. . . . Walker's $4.5+ billion Foxconn giveaway costs taxpayers $200+ million annually, pulling resources from the rest of the state to subsidize a broken political deal."[8]  He pledged to reform the WEDC.  DPW members worked to support Governor Evers' candidacy because of this pledge.

---

[8] Tony Evers, *Economic Development*, https://tonyevers.com/plan/economic-development/ (last visited Feb. 20, 2019).

38.     Governor Evers also campaigned on a promise to undo voter ID restrictions that Scott Walker had put in place by administrative rule.[9]  He campaigned on a promise to use the Governor's power over litigation brought in the name of the state to withdraw Wisconsin from legal challenges to the Affordable Care Act.[10]  He campaigned on a promise to use the governor's power to prevent the transfers of funds from state veterans' homes.[11]  He campaigned on a promise to eliminate work requirements for Medicaid by revising a waiver Scott Walker had obtained from the federal government.[12]  He campaigned on a promise to expand Medicaid in Wisconsin.[13]  He campaigned on a promise to eliminate drug testing requirements for food stamp recipients implemented by Scott Walker's administrative rules.[14]  Plaintiffs and DPW members worked to support Evers' candidacy because of these promises.

---

[9] Tony Evers, *Government for Us Agenda*, https://tonyevers.com/govforus/ (last visited Feb. 20, 2019) ("Tony will make voting easier by supporting automatic voter registration, expanding eligible IDs for voting, and calling special elections in a timely fashion.").

[10] Molly Beck and Patrick Marley, *Tony Evers Says He Will 'Take Any Steps Possible' to Prevent GOP Plan to Take Away His Power*, MILWAUKEE J. SENTINEL (Dec. 2, 2018), https://www.jsonline.com/story/news/politics/2018/12/02/tony-evers-says-he-take-any-steps-possible-prevent-gop-plan-take-away-his-power/2181201002/  ("Another provision could allow Republican lawmakers to prevent the state from getting out of a lawsuit challenging the Affordable Care Act, or Obamacare, something Evers has promised to do.")

[11] Tony Evers, *Protecting and Honoring Our Veterans*, https://tonyevers.com/plan/protecting-and-honoring-our-veterans/ (last visited Feb. 20, 2019) ("As Governor, Tony will: Oppose all efforts to transfer money out of our veteran retirement homes to backfill Republican budget deficits.").

[12] David Wahlberg, *Bills Would Impede Gov.-Elect Tony Evers' Changes to Health Care*, WISC. ST. J. (Dec. 4, 2018), https://madison.com/wsj/news/local/health-med-fit/bills-would-impede-gov--elect-tony-evers-changes-to/article_44076c85-e2ce-5243-9939-1ffc042f7b21.html, ("Evers has said he might not implement the work requirement, by revising the waiver with the federal government.").

[13] Shamane Mills, *Can Wisconsin's Incoming Governor Deliver on Campaign Health Care Promises*, WISC. PUB. RADIO (Dec. 3, 2018), https://www.wpr.org/can-wisconsins-incoming-governor-deliver-campaign-health-care-promises, ("During the gubernatorial campaign and after his election, Gov.-elect Democrat Tony Evers promised to do things differently. Republican Gov. Scott Walker had rejected federal money to expand Medicaid; Evers said he would take it.").

[14] Arthur Delaney and Jeffrey Young, *Lame-Duck Republicans Stick It to the Poor in Wisconsin*, HUFFPOST (Dec. 5, 2018), https://www.huffingtonpost.com/entry/lame-duck-republicans-stick-it-to-the-poor-in-wisconsin_us_5c080567e4b069028dc5eb62 ("In the early morning hours of a lame-duck session

39.     Although Wisconsin's voters elected Evers and Kaul into office, Republicans in the Wisconsin State Senate and Wisconsin State Assembly continued to hold large majorities in those heavily-gerrymandered legislative bodies, despite decisively losing the statewide popular vote.  As a result, the people of Wisconsin were set to be represented by a divided government for the first time in a decade.

## III.   Wisconsin Legislative Republicans Plot to Strip Powers from Newly Elected Democrats in Lame Duck Session

40.     The day after DPW-supported candidates prevailed, Defendant Robin Vos, the Republican Speaker of the Wisconsin Assembly, stated a desire to "rebalance" the powers of government in view of the electoral results.[15]

41.     On November 8, 2018, Defendant Vos held a private meeting with Defendant Fitzgerald and other Republican members of the Wisconsin Legislature to discuss ways to limit the powers of the incoming Democratic office holders.[16]

42.     On November 9, 2018, local news media reported on an interview with Defendant Vos regarding a Republican-proposed lame-duck session.  Defendant Vos stated that he proposed to have a lame-duck session, and that its purpose was "about making sure what we have in practice stays in practice."[17]

---

Wednesday, state lawmakers approved legislation that would prevent Governor-elect Tony Evers and Attorney General-elect Josh Kaul from carrying out their campaign promises to protect and expand food, medical and unemployment assistance for low-income Wisconsinites.").

[15] AP, *Speaker Vos open to looking at ways to limit Gov.-elect Tony Evers' power*, WISN (Nov. 7, 2018), https://www.wisn.com/article/speaker-vos-open-to-looking-for-ways-to-limit-gov-elect-tony-evers-power/24805758.

[16] AP, *Tony Evers Prepares Transition, Republicans Look to Curb Power*, FOX6NOW.COM (Nov. 8, 2018), https://fox6now.com/2018/11/08/evers-prepares-transition-republicans-look-to-curb-power/.

[17] Adam Rogan and Stephanie Jones, *Vos Responds to Evers, Explains Ideas for Executive Power Changes*, JOURNAL TIMES (Nov. 9, 2018), https://journaltimes.com/news/local/govt-and-politics/vos-responds-to-evers-explains-ideas-for-executive-power-changes/article_9ac40668-f24c-5a9a-a71e-17bfa9070b52.html.

A. **Legislative Republicans Call an "Extraordinary Session" Marked by Procedural Irregularities**

43. On Friday, November 30, 2018, the Assembly and Senate Committees on Organization each voted to convene an "extraordinary session" of the legislature, scheduled to begin the next business day. The Wisconsin Constitution does not provide for "extraordinary" sessions. Nor does it provide for legislative sessions, such as this extraordinary session, convened neither pursuant to existing law nor at the request of the governor.

44. On the afternoon of that same day, November 30, 2018, the Assembly Committee on Organization introduced five bills to be considered in the December 2018 Extraordinary Session: Assembly Bill ("AB") 1069, AB 1070, AB 1071, AB 1072, and AB 1073, all of which were designed to target and undermine the electoral promises made by Governor Evers and Attorney General Kaul.

45. Also on November 30, 2018, these five bills were referred to the Wisconsin Legislature's Joint Committee on Finance, where joint-committee co-chairs quickly noticed a public hearing on the bills. The Joint Committee on Finance also noticed an executive session in which that Committee — which was (and still is) comprised of 12 Republicans, including Defendants Darling and Nygren, and 4 Democrats — would vote on whether to advance the legislative package to the floors of the State Assembly and State Senate. Both the public hearing and the executive session were scheduled for the next business day, December 3, 2018.

46. On December 3, 2018, the Wisconsin Legislature's Republican-controlled Joint Finance Committee convened a public hearing on the five assembly bills that were introduced on November 30, 2018. The public hearing also related to Senate Bill ("SB") 883, SB 884, SB 885, SB 886, and SB 887, the five companion bills to AB 1069, AB 1070, AB 1071, AB 1072, and AB 1073, which were put before the Joint Finance Committee on December 3, 2018.

47.     The Joint Finance Committee's public hearing on the extraordinary session bills lasted approximately 10 hours.  More than one thousand Wisconsinites testified or registered in opposition to these bills.[18]  As one person testified, "[Evers and Kaul's] policies were clear and known, and voters voted for them because of those policies."[19]

48.     In the middle of the early morning hours of December 4, 2018, the Joint Finance Committee recommended passage of three extraordinary session bills (AB 1069 and its companion bill, SB 883; AB 1070 and its companion bill, SB 884; AB 1072 and its companion bill, SB 886) on a strictly party-line vote of twelve to four.

**B.      Wisconsin Republicans Pass Three Bills in the Lame-Duck "Extraordinary" Session**

49.     On Tuesday, December 4, 2018, the Assembly and the Senate reconvened to consider the bills recommended by the Joint Committee on Finance.

50.     The Senate passed Senate Amendment 1 to SB 883 and then, after approximately 8 minutes of debate, the Senate passed SB 883 as amended on a strict party-line vote of 18-15.  Not one Democratic Senator voted in favor of the legislation.  The Senate immediately messaged SB 883, as amended, to the Assembly and recessed into closed party caucuses.

51.     On the night of December 4, 2018, at approximately 10:15pm, the Republican-controlled Senate reconvened and adopted, on a party-line vote of 18-15, Senate Amendment 2, which replaced the full text of SB 886.  SB 886, as amended, was passed by a party-line vote of 18-15 after approximately 30 minutes of debate on the Senate floor.

---

[18] *See, e.g.*, Wis. State Legislature Joint Committee on Fin., Rec. of Committee Proc. (Dec. 3, 2018),  https://docs.legis.wisconsin.gov/2017/related/records/joint/finance/1475292. Only *two* people registered in favor of these bills.  None spoke publicly in favor.  *Id.*

[19] Shawn Johnson and Laurel White, *After Raucous hearing, Bills to Restrict Early Voting, Curtail Evers' Powers Move to Full Legislature*, WPR NEWS (Dec. 3, 2018), https://www.wpr.org/after-raucous-hearing-bills-restrict-early-voting-curtail-evers-powers-move-full-legislature.

52.     Shortly after midnight, the Assembly concurred in SB 886, as adopted by Senate, after a total of approximately 73 minutes of floor debate.  The vote, which fell largely along party lines (and included no Democrats in favor), was 62-35.

53.     Before sunrise on December 5, 2018, at approximately 4:30am, the Assembly concurred in SB 883, as adopted by the Senate, after a total of approximately 17 minutes of floor debate. The vote, which fell almost exclusively along party lines (and included no Democrats in favor), was 57-27.

54.     At almost the same time that the State Assembly was deliberating SB 886 and SB 883, the State Senate reconvened.  At approximately 5:48am on December 5, 2018, Republican members in that body adopted, on a strictly party-line vote of 18-15, Senate Substitute Amendment 1 to SB 884, which replaced the full text of that bill.  The Senate passed SB 884, as amended, with less than 15 minutes of floor debate and by a vote of 17-16, again with no Democratic members voting in favor.  The Senate immediately messaged SB 884, as amended, to the Assembly.

55.     Just before 8:30am on that same morning, the State Assembly concurred in SB 884, as adopted by the Senate.  The Assembly held a vote after barely two hours of floor debate, and SB 884 was passed by the Republican-controlled Assembly on a strict party-line vote of 62-33.

56.     The State Senate and State Assembly adjourned the December 2018 extraordinary session on December 5, 2018, at 7:43am and 8:22am, respectively.

57.     Less than 48 hours had elapsed from the beginning of the Joint Committee on Finance's public hearings to adjournment of the December 2018 extraordinary session.

**C.      The Bills Undermined the Results of the Election**

58.     The purpose and effect of the bills was to take executive power away from Governor Evers, Attorney General Kaul, and their administrations so that they would be unable to

carry out their campaign promises, and to move those powers to the Republican-controlled legislature.

59.     Thus, SB 884 (eventually Act 369) changed the composition of the WEDC's board. It packed it with legislative appointees, changing the composition from 12 voting members (6 appointed by the governor, 2 majority party members, 2 minority party members, and 2 private citizens selected by legislative majority leaders) to 18 voting members (6 appointed by the governor, 5 appointed by the Speaker of the Assembly [Defendant Vos], 5 appointed by the Senate Majority Leader [Defendant Fitzgerald], and 2 members appointed by minority party leaders).[20] The purpose and effect was to move the power to appoint a majority of the board to Republican members of the legislature.  SB 884 also removed the ability of the governor to appoint the WEDC's CEO.[21]

60.     SB 884 codified as law Scott Walker's administrative rules implementing strict requirements to obtain state voter identification documents. [22]  This removed the ability of Governor Evers to eliminate these requirements through executive power and makes it impossible for Governor Evers to change the administrative rules he expressed an interest in changing.

61.     SB 884 also removed the discretion of the executive to "compromise or discontinue" civil lawsuits, including the state of Wisconsin's suit challenging the Affordable Care Act.[23]  It also transferred this ability to the Republican-dominated state legislature, which has expressed an aversion to Governor Evers' campaign promises, which included removing

---

[20] 2017 Wisconsin Act 369, Section 82m.

[21] 2017 Wisconsin Act 369, Section 102.

[22] 2017 Wisconsin Act 369, Section 91.

[23] 2017 Wisconsin Act 369, Section 26.

Wisconsin from federal lawsuits challenging the Affordable Care Act.  Governor Evers has expressed his clear intent to remove Wisconsin from a federal lawsuit challenging the constitutionality of the Affordable Care Act, but his efforts to fulfill his campaign promise have been blocked by the Acts.[24]

62.     SB 884 further stripped the governor's power to prevent transfers of funds from state veterans' homes, thus thwarting Governor Evers' policy proposal to preserve funding for those institutions.

63.     SB 886 (eventually Act 370) removed the governor's discretion to eliminate work requirements for Medicaid by limiting his authority to amend or revise a relevant Medicaid waiver.[25]  It gave the ultimate say with respect to such an amendment or waiver to bodies controlled by the Wisconsin Legislature's Republican majority, which is opposed to Governor Evers' campaign promise of expanding health care for Wisconsin residents.

64.     SB 886 also removed the governor's authority to expand Medicaid in Wisconsin.[26] As with the Medicaid waiver, SB 886 gave the ultimate say with respect to Medicaid expansion to bodies controlled by the Wisconsin Legislature's Republican majority, which is opposed to Governor Evers' campaign promise of expanding health care for Wisconsin residents.

---

[24] Molly Beck & Patrick Marley, *Tony Evers reverses course, won't direct Josh Kaul to withdraw from Obamacare lawsuit after all*, MILWAUKEE JOURNAL SENTINEL (Jan. 24, 2019), https://www.jsonline.com/story/news/politics/2019/01/23/tony-evers-not-directing-josh-kaul-withdraw-lawsuit-after-all-spokeswoman-says/2659069002/.

[25] 2017 Wisconsin Act 370, Section 14.

[26] 2017 Wisconsin Act 370, Section 13.

65.     And SB 886 codified as law Scott Walker's administrative rules implementing drug testing requirements to obtain food assistance.[27]  This removed the ability of Governor Evers to eliminate these requirements through the exercise of executive power.

66.     The bills passed by the Republican-controlled legislature significantly limited the pre-election powers of Wisconsin's Executive in other ways as well.  For example, SB 884 (now Act 369) prevents the governor from re-nominating candidates for executive offices if they have been rejected by the Senate (for those positions requiring Senate consent), or from delegating any "duties of the office or position" to rejected nominees.[28]  SB 886 (now Act 370) allows the Republican-controlled legislature to throttle the budget and staffing of Wisconsin's Department of Health Services if it has not complied with implementing Scott Walker's Medicaid work requirements,[29] or if it attempts to expand Medicaid without the legislature's approval.[30]  SB 884 hamstrings the executive from settling actions against the state for injunctive relief,[31] and it gives the legislature the power to suspend administrative rules implemented by the executive indefinitely.[32]

67.     Each of these diminutions of pre-election executive power thwarts the will of a majority of Wisconsin voters, and in particular of DPW members, including those named here. Wisconsin voters voted for one thing — to give Evers and Kaul the authority to promulgate policy by using the then-existing powers of the Executive — but once it became clear that Governor Evers

---

[27] 2017 Wisconsin Act 370, Section 17.

[28] 2017 Wisconsin Act 369, Section 4.

[29] 2017 Wisconsin Act 370, Section 44.

[30] 2017 Wisconsin Act 370, Section 10.

[31] 2017 Wisconsin Act 369, Section 30.

[32] 2017 Wisconsin Act 369, Section 64.

and Attorney General Kaul would take office, the Republican-dominated legislature and outgoing Republican governor gave them something else, by moving many of the executive powers the lame-duck legislators deemed problematic to their own hands.

### D. Republicans Acknowledge that the Acts Were Designed to and Do Thwart the 2018 Election Results

68.     Before, during, and after passage of the Acts, Republicans Legislators admitted that they designed the Acts in order to remove the ability of newly elected statewide officeholders to keep their campaign promises, and that in fact the Acts accomplish that objective.  Thus, on December 3, 2018, Defendant Fitzgerald stated in a radio interview that he supported limiting the powers of the incoming administration because Evers would create "absolutely the most liberal administration that we have ever seen in the state of Wisconsin."[33] Again on December 5, 2018, Defendant Fitzgerald stated that Evers' "liberal agenda" justified the lame-duck action.[34]

69.     During consideration of the bills, Speaker Vos stated that "We are going to stand like bedrock to guarantee that Wisconsin does not go back."[35]  He was unwavering in his attempt to strip from Governor Evers the executive powers he was elected to hold.  On the afternoon of December 4, 2018, Speaker Vos stated that "As you think about where the legislature has been over the course of the past eight years, we have had an incredible partner with Governor Walker. We have taken the time to look at Wisconsin in 2010 and where we are today.  There are a

---

[33] Greenblatt, *Lame-Duck Power Grabs Aren't New*.

[34] Johnson and White, *After Raucous hearing, Bills to Restrict Early Voting, Curtail Evers' Powers Move to Full Legislature*.

[35] Mitch Smith and Monica Davey, *Wisconsin Republicans Defiantly Move to Limit the Power of Incoming Democrats*, NY TIMES (Dec. 5, 2018), https://www.nytimes.com/2018/12/05/us/wisconsin-power-republicans.html?module=inline.

number of very important reforms that each one of us have ran on and that we have promised our constituents we will do everything in our power to make sure they stay on the books in Wisconsin."[36]

70.     As the Wisconsin Assembly considered this legislation — however minimally — Speaker Vos admitted "I [] know that the situation that we are sitting in right now if we do not pass these proposals is that we are going to have a very liberal governor who is going to enact policies that are in direct contrast to what many of us believe in."[37]

71.     Speaking on AB 1072/SB 886 shortly after midnight on December 5, 2018, Republican State Representative John Jagler stated "Do we want to be here today?  No, I wish we wouldn't because I wish this wasn't in danger, but it clearly is because incoming Governor Tony Evers said it's going away."[38]

72.     In the course of debate, Defendant Nygren stated that one reason for the legislation is that "The governor-elect [Tony Evers] has publicly expressed his desire to undo things that this legislative body has passed . . . ."[39]

73.     Shortly before passage, Scott Walker acknowledged that "[t]hese are debates that you could have had a year ago."[40]  The only explanation for why they had not taken place before December 2018 is the November election results.

---

[36] WKOW.com, *Senate Begins Debate on Controversial Lame-Duck Bills* (Dec. 4, 2018), https://wkow.com/news/political/2018/12/04/update-senate-in-session-assembly-to-begin-work-at-4-p-m, at 00:00-00:24.

[37] Wisconsin State Assembly (Wisconsin Eye), December 4, 2018 at 10:49pm.

[38] Wisconsin State Assembly (Wisconsin Eye), December 5, 2018 at 12:07am.

[39] Wisconsin State Assembly (Wisconsin Eye), December 5, 2018 at 12:07am.

[40] Beck, *Scott Walker Signals Support for Republican Plan to Shrink Power of Tony Evers, Josh Kaul.*

74.     Similarly, Republican State Representative Joel Kitchens stated that "Again, people are going to say, 'Why didn't you do this when Walker was governor?'"  In a moment of candor, he conceded, "That's legit."[41]

75.     On December 19, 2018, Republican strategist Bill McCoshen stated that "the process didn't look good" for enacting the lame-duck session laws, but reportedly said "it won't be top-of-mind for voters when they decide on legislative races in 2020."[42]

**D.     Scott Walker Signs the Lame-Duck Session Bills into Law.**

76.     Governor Scott Walker called for SB 883, SB 884 and SB 886 on Thursday, December 13, 2018, and he signed them the next day.  He attempted to argue that the new legislation would not alter the powers of the Executive.  But nothing could be further from the truth, as the legislators admitted and as is plain from the face of the lame-duck legislation.

77.     After being signed by Governor Walker on December 14, 2018, SB 883, SB 884 and SB 886 were published on December 15, 2018, as 2017 Wisconsin Act 368, 2017 Wisconsin Act 369 and 2017 Wisconsin Act 370, respectively.[43]

**IV.     Plaintiffs Suffer Harm as a Result**

78.     As a result of the passage of Acts 369 and 370, Plaintiffs' rights were and continue to be violated.[44]  The Acts further consolidated power in the hands of Republican

---

[41] Mark Sommerhauser, *Amid Backlash, Wisconsin Republicans Struggle to Justify Lame-Duck Laws*, WISCONSIN ST. J. (Dec. 19, 2018), https://madison.com/wsj/news/local/govt-and-politics/amid-backlash-wisconsin-republicans-struggle-to-justify-lame-duck-laws/article_b4e73f22-4ebc-5366-8e7f-683e718b0d89.html.

[42] *Id.*

[43] For nonpartisan analysis of the Acts, see Legislative Council, *2017 Wisconsin Act 369*, https://docs.legis.wisconsin.gov/2017/related/lcactmemo/act369.pdf; Legislative Council, *2017 Wisconsin Act 370*, https://docs.legis.wisconsin.gov/2017/related/lcactmemo/act370.pdf.

[44] Although all of the lame-duck session acts are suspect from a process standpoint, Plaintiffs challenge only those provisions of the statutes, all of which are part of Acts 369 and 370, through which the legislature arrogated to itself executive power at the expense of the Executive.

legislators and transferred powers traditionally held by the Executive and traditionally viewed as executive in nature, such as the power to control litigation, to the Republican-controlled legislature or to specific members or committees thereof.  This one-two punch unconstitutionally prevents Evers, Kaul, Plaintiffs, and DPW members from influencing the operation of state government.

79.     As detailed above, Plaintiffs worked to support Governor Evers and Attorney General Kaul in their electoral campaigns because of the policies that Governor Evers and Attorney General Kaul announced they would advance using the authorities traditionally exercised by Wisconsin's Executive.  All plaintiffs are harmed by Acts 369 and 370 as a result of the inability of Governor Evers and Attorney General Kaul to pursue the policies that those officials campaigned on as candidates and to exercise the powers of office that Wisconsin's voters, including Plaintiffs, lawfully elected them to exercise.

80.     The policies include reforming the WEDC; eliminating regulatory voter ID requirements; withdrawing Wisconsin from legal challenges to the Affordable Care Act and otherwise using the office of the Attorney General to further litigation that the Executive deems advisable; preventing transfers of funds from state veterans' homes; eliminating work requirements for Medicaid recipients; expanding Medicaid; and eliminating drug testing requirements under Wisconsin's food stamp program.

81.     The powers that were stripped from the offices of Wisconsin's Executive include the ability to exercise ultimate authority over the personnel and spending of the Department of Health Services; the ability to delegate executive functions within executive departments; the ultimate authority to settle or compromise injunctive suits against the state; and the ability to implement administrative rules without what amounts to legislative veto.

82.     As detailed above, these changes were driven forward by members of a lame-duck, gerrymandered legislature, overseen by a governor who had been elected out of office, in an "extraordinary session" initiated only after the results of an election were clear and for which there is no precedent in Wisconsin history or law.  The lame-duck legislators took action — on the basis of Plaintiffs' party affiliation and policy preferences — for the obvious purpose and effect of undoing the clear intent of the majority of voters (including Plaintiffs) and depriving an incoming governor of powers that predecessor administrations possessed because Evers and Kaul promised to use those powers to implement policies they and other Democratic candidates campaigned on.  The Acts thus violate basic principles of representative government inherent in our republican form of government.

83.     All plaintiffs are harmed by Acts 369 and 370 because they subject Plaintiffs to disfavored treatment on the basis of the views they hold and the policy outcomes they worked to support.

84.     By targeting Democratic officeholders in order to diminish their ability to influence state government, the Acts improperly retaliate against Plaintiffs and substantially burden their rights of expression and association by making it more difficult to fundraise, register voters, attract volunteers, generate support from independents, and recruit candidates.

85.     At least some of the harms that Plaintiffs have suffered or will suffer are irreparable and cannot be addressed through any other adequate remedy at law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF ARTICLE IV, SECTION 4,
### OF THE UNITED STATES CONSTITUTION

86.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

87.     In view of the facts detailed above, the Acts violate the Guarantee Clause of the United States Constitution, set forth in Article IV, Section 4, thereof, and are therefore invalid.

88.     By enacting Acts 369 and 370 (a) in an "extraordinary" and unprecedent lame-duck session, (b) after the Wisconsin electorate voted Scott Walker out of office, (c) for the purpose and with the effect of blunting the results of the November 2018 election by arrogating to the Republican-controlled legislature powers traditionally held by the executive branch, (d) while specifically targeting areas that the incoming administration had campaigned on, (e) because members of a rival political party won that valid election to select representatives in the executive branch, the lame-duck legislators, including defendants Vos, Fitzgerald, Darling, Nygren, Roth, Ballweg, and Nass, violated the Guarantee Clause.

89.     Accordingly, the Acts deprive Plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.  The Acts should therefore be enjoined.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FIRST AMENDMENT

90.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91.     Plaintiffs and other voters in the State of Wisconsin who voted in support of Evers and/or Kaul have a First Amendment right to freely associate with each other without discrimination by the State based on that association or their political beliefs, to participate in the political process and vote in support of Democratic candidates without discrimination or retaliation by the State because of their voting preferences, and to express their political viewpoint without discrimination by the State because of the expression of those views or the content of their expression.

92.     In view of the facts specified herein, Acts 369 and 370 violate Plaintiffs' rights under the First and Fourteenth Amendment.  Among other things, the Acts improperly targeted Plaintiffs' political viewpoint and unlawfully eliminated their ability, through duly elected representatives, to enact their policy preferences.

93.     By enacting Acts 369 and 370, the Republican legislators responsible — including defendants Vos, Fitzgerald, Darling, Nygren, Roth, Ballweg, and Nass — retaliated against Plaintiffs due to their political views and the expression of their political preferences; abridged Plaintiffs' exercise of their First Amendment rights to express themselves, associate, and petition the government for change by, among other things, unduly burdening the effective exercise of such rights, including of the vote; and burdened Plaintiffs' associational rights simply because they voted for Democratic candidates, and because of the positions that these candidates expressed and would take on matters of public policy but for the passage of the Acts.

94.     There is no compelling, neutral government interest justifying Act 369 or Act 370.

95.     Plaintiffs' First Amendment rights have been harmed and continue to be harmed as a result of the passage of the Acts because, among other things, Plaintiffs' associational rights have been subject to disfavored treatment, including by having the Executive's powers stripped, on the basis of the views they hold, the association they maintain, and the views they expressed.

96.     Accordingly, the Acts deprive Plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.  The Acts should therefore be enjoined.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE FOURTEENTH AMENDMENT — EQUAL PROTECTION

97.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the previous paragraphs as if fully set forth herein.

98.     The Equal Protection Clause of the Fourteenth Amendment protects persons living within the United States from state action denying equal protection of the law.

99.     Acts 369 and 370 have no rational basis because it was designed for the purpose of discriminating and retaliating against voters who chose to elect Evers and Kaul because of their political beliefs and the views they expressed.

100.    Acts 369 and 370 further violate the Equal Protection Clause because it was intended to and does dilute the power of Democratic voters' votes.

101.    The Acts' discriminatory terms and application serve no compelling, content-neutral government interest and are not narrowly tailored.

102.    Through the actions described above, the Acts violate the Fourteenth Amendment's Equal Protection Clause.  Accordingly, the Acts deprive Plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.  The Acts should therefore be enjoined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that judgment should be entered in their favor and against the Defendants as follows:

(a)     Declare 2017 Wisconsin Acts 369 and 370 unconstitutional and invalid, and declare the changes they effectuated a violation of Plaintiffs' constitutional rights;

(b)     Permanently enjoin all Defendants and all those acting in concert with them from implementing, facilitating, or administering any provision of Act 369 or Act 370;

(c)     Award Plaintiffs their reasonable attorneys' fees, costs, and litigation expenses incurred in bringing this action pursuant to 28 U.S.C. §§ 1983 and 1988; and

(d)     Grant any such other and further relief as this Court may deem just and proper.

31

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable as a matter of right.

Dated: February 21, 2019

Respectfully submitted,

HOLWELL SHUSTER & GOLDBERG LLP

By:___ */s/ Vincent Levy*_____

Sarah A. Zylstra
State Bar No. 1033159
1 South Pinckney Street, Suite 410
P.O. Box 927
Madison, Wisconsin  53701-0927
(608) 257-9521
szylstra@boardmanclark.com

Vincent Levy (vlevy@hsgllp.com)
Kevin D. Benish (kbenish@hsgllp.com)
Timothy W. Grinsell (tgrinsell@hsgllp.com)
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

*Counsel for the Plaintiffs*